```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Steven R. Ogg,                    :

     Plaintiff,              :

  v.                              :     Case No. 2:14-cv-987

Commissioner of Social Security,        JUDGE GEORGE C. SMITH
                                  :     Magistrate Judge Kemp

     Defendant.              :

<u>REPORT AND RECOMMENDATION</u>

I.  <u>Introduction</u>

Plaintiff, Steven R. Ogg, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on December 27, 2011, and alleged that Plaintiff became disabled on December 23, 2011.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on March 20, 2013.  In a decision dated April 18, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on June 30, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on October 6, 2014.  Plaintiff filed his statement of specific errors on November 10, 2014, to which the Commissioner responded on February 13, 2015.  Plaintiff filed a reply brief on March 4, 2015, and the case is now ready to decide.

II.  <u>The Lay Testimony at the Administrative Hearing</u>

Plaintiff, who was 52 years old at the time of the administrative hearing and who has a high school education,

testified as follows. His testimony appears at pages 72-91 of the administrative record.

Plaintiff last worked as a forklift operator. He performed the job sitting down, but had some responsibility to do manual lifting as well. That could involve lifting up to 50 pounds. He was terminated for allegedly sleeping on the job. He had worked for other companies before 2011, but mostly doing the same type of warehouse work. He not only operated a forklift, but did line production work and also operated other equipment. At one time, he also worked as a grocery store manager.

When asked about what kept him from working, Plaintiff said that he has a sleep disorder that prevents him from getting a proper amount of rest. He had done sleep studies but did not have a CPAP machine due to insurance issues. He would fall asleep two or three times daily. He drove, but never by himself. Plaintiff also testified about shortness of breath, which he attributed in part to his weight (352 pounds at his last doctor's appointment), and to numbness in his hands and fingers. His feet also swelled several times per day, requiring him to sit down and elevate his feet for an hour or more. Reaching above shoulder level also caused pain, and torn rotator cuffs are suspected.

Plaintiff was able to sit for half an hour to 45 minutes at a time. He could stand for about the same period. Standing and walking caused pain in his legs and back, as well as swelling in his feet afterwards. He had applied for and received unemployment benefits and did go to job interviews but was never hired due to his health problems.

### III. The Medical Records

The medical records in this case are found beginning on page 291 of the administrative record. The pertinent records - those relating to Plaintiff's three statements of error - can be summarized as follows.

In 2011, Plaintiff was diagnosed with severe sleep apnea. A CPAP machine was recommended. The physician notes indicate that Plaintiff lost his job and, as a result, had no insurance to pay for the device. (Tr. 291-302).

Dr. Rudy performed a consultative physical examination and submitted a report about that examination on March 13, 2012. He noted that Plaintiff had lost two jobs due to sleep apnea. Plaintiff weighed 340.6 pounds but his abdominal exam was normal except for limitations due to obesity. He could bend a full 90 degrees at the waist and had full motion of all his joints. He could also lift 25-30 pounds from floor level. Dr. Rudy diagnosed morbid obesity which caused serious obstructive sleep apnea and attendant narcolepsy. He thought those conditions endangered Plaintiff and others if Plaintiff were to drive or operate heavy equipment. Finally, he diagnosed venous insufficiency with brawny induration manifested in the lower legs. Nevertheless, Dr. Rudy thought Plaintiff would be employable if his sleep apnea were treated successfully. (Tr. 320-22).

The file contains treatment notes from Fairfield Community Health Center. A chart note from June 12, 2012 shows that Plaintiff was taking medication for diabetes and his blood sugar was under control. He was doing yard work for exercise and trying to walk around outside. He did have moderate shortness of breath. He was trying to start a lawn care business. He was also trying to get the CPAP machine and was sleeping only 4-5 hours at night. Some edema was present in his extremities. (Tr. 328-31). At a November 1, 2012 visit, he complained of bilateral shoulder pain. The treatment note expressed "concern" about possible rotator cuff impingement, and x-rays were to be taken. His symptoms included pain when reaching overhead and stiffness in both shoulders. (Tr. 342-45). At the prior visit, he was

feeling well overall and reported that medication had eliminated the numbness in his feet. (Tr. 347). The xrays were taken on February 9, 2013, and showed no acute abnormality in either shoulder. (Tr. 369).

In addition to these records, there are opinions from state agency reviewers. Dr. Eskinazi gave great weight to Dr. Rudy's findings, concluding that Plaintiff could lift 25 pounds occasionally and ten pounds frequently, had some postural limitations, and should not be around hazards or have concentrated exposure to environmental irritants. (Tr. 98-104). Both she and Dr. Golestany, who affirmed her findings, commented that Plaintiff was non-compliant with treatment due to finances.

Plaintiff submitted several additional medical records to the Appeals Council. It determined that all of these records spoke to Plaintiff's condition after the date of the ALJ's decision and did not "affect the decision about whether you were disabled beginning on or before April 18, 2013." (Tr. 2).

IV. The Vocational Testimony

Mary Evers was the vocational expert in this case. Her testimony begins at page 92 of the administrative record.

Ms. Evers was asked to categorize Plaintiff's past work. She identified the forklift operator job as semiskilled and performed at the medium exertional level. The nightshift grocery store manager position was skilled and light, and the machine operator job was also skilled. Plaintiff performed it at the light exertional level but it is typically a medium job. She did not think any of the job skills Plaintiff acquired would transfer to sedentary work.

Ms. Evers was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who could never climb ladders, ropes, or scaffolds, who could occasionally climb

ramps or stairs, and who could occasionally stoop. The person could frequently engage in fingering or fine manipulation of objects and should avoid exposure to operational controls of moving machinery and unprotected heights. Finally, the person had to avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. Ms. Evers said that such a person could not do any of Plaintiff's past work but could be employed as a packer, inspector, or stock clerk. She gave numbers for those jobs in the regional and national economies. She also said that a limitation on overhead reaching to occasional, as opposed to frequent, would impact the stock clerk job, but not the other two.

Ms. Evers was next asked about someone who was limited as described in the first hypothetical, but who also had to elevate his or her legs for at least two hours in a workday. That, she said, was work-preclusive. The same would be true if the person was off task for 15 percent of the workday or would miss more than one day of work per month on an unexcused basis.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 44-61 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 30, 2015. Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 23, 2011. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including morbid obesity, obstructive sleep apnea with a pulmonary artifact and an active tobacco abuse disorder, diabetes with renal manifestations, venous insufficiency with brawny edema in the lower extremities,

radiculopathy, and bilateral shoulder injuries.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that he could never climb ladders, ropes, or scaffolds, could occasionally climb stairs and ramps, could occasionally stoop, could frequently engage in overhead reaching bilaterally, could frequently engage in fingering or fine manipulation bilaterally, had to avoid concentrated exposure to respiratory irritants, and had to avoid all exposure to operational controls of moving machinery and unprotected heights.

The ALJ next concluded that, given this residual functional capacity, Plaintiff could not do his past relevant work, but he could do certain jobs identified by the vocational expert, including packer, inspector, and stock clerk.  The ALJ further found that such jobs existed in significant numbers in the State and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ's residual functional capacity determination is not supported by substantial evidence; (2) the ALJ erred by not appointing a medical expert to testify as to Plaintiff's limitations; and (3) the ALJ's credibility determination was improper.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

-6-

evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  The RFC Determination

Plaintiff argues first that the ALJ's decision about residual functional capacity was not supported by substantial evidence.  In particular, he claims that the ALJ did not take his chronic venous insufficiency into account and that the ALJ ignored his testimony about having to elevate his legs periodically throughout the day.  That need, he asserts, is inconsistent with the type of standing and walking which light work entails.  He points out that this condition was confirmed by the consultative examiner and that other records document either swelling or blistering in his legs.  Lastly, he argues that the

combination of his impairments limits him to a reduced range of sedentary work, and if that is so, he must be found to be disabled under the Medical-Vocational Guidelines. The Commissioner responds that the ALJ expressly discounted Plaintiff's testimony about having to elevate his legs and that there is support in the record for the ALJ's decision.

    The ALJ made several findings about Plaintiff's venous insufficiency. He noted that the consultative examiner found no significant swelling in Plaintiff's legs and reported that Plaintiff did not wear support hose. (Tr. 48). Further, notes of examinations performed in September and October of 2012 showed no edema, nor did notes of examinations in 2013. (Tr. 48-49). The ALJ also commented on evidence that Plaintiff could shower, dress, mow, clean, shop, do light repairs, do light yard work, and walk outside. (Tr. 50). Additionally, the ALJ pointed out that any leg problems had not prevented Plaintiff from working until December, 2011, and he was fired for sleeping on the job and not due to a need to elevate his legs. Finally, Plaintiff had advertised himself as available to mow yards and also collected unemployment benefits. Id.

    It is important to note that no treating, examining, or reviewing source concluded that Plaintiff could not perform the walking and standing requirements of light work despite his venous insufficiency. Dr. Rudy, the consultative examiner who diagnosed that condition, said that Plaintiff could work if his sleep apnea was brought under control. The notes from Fairfield Community do, as the ALJ indicated, show the absence of edema more often than not. Neither of the state agency physicians believed that this condition precluded the performance of light work. One might disagree with the ALJ's conclusion on this issue, but that is not the same as a finding that the conclusion was not supported by substantial evidence. As the Court of

-8-

Appeals stated in Kalmbach v. Comm'r of Social Security, 409 Fed. Appx. 852, 859 (6th Cir. Jan.7, 2011), "[i]f substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal standards, we are not at liberty to reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion." Consequently, there is no merit to Plaintiff's first assignment of error.

### B. The Need for a Medical Expert

Plaintiff's second claim of error is that the ALJ erred by not calling a medical expert to testify at the administrative hearing. Plaintiff contends that since no treating source expressed an opinion as to Plaintiff's capabilities, it was error for the ALJ to rely on the "outdated" consultative examination (which Plaintiff attributes to Dr. Vasiloff, but which was actually performed by Dr. Rudy) and that the later treatment notes required an interpretation by a testifying expert. Without that testimony, Plaintiff argues that the ALJ simply expressed his own opinion about the medical issues in this case, and that an ALJ is not permitted to do so.

As the court observed in Griffin v. Astrue, 2009 WL 633043 *10 (S.D. Ohio March 6, 2009), "[t]he primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases." Whether to call such an expert to testify is generally left to the discretion of the ALJ, see id., quoting Haywood v. Sullivan, 888 F.2d 1463, 1467-68 (5th Cir. 1989), and the Court may overturn the exercise of that discretion only if it appears that the use of a medical consultant was necessary — rather than simply helpful — in order to allow the ALJ to make a proper decision. See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir. 1986), quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977). This Court has rejected a similar claim

-9-

of abuse of discretion where, for example, "[t]he records were sufficiently understandable on that issue to permit the ALJ to interpret them without much assistance," and where the state agency reviewers' opinions adequately addressed the medical issues in the case. Rawls v. Comm'r of Social Security, 2014 WL 1091042, *6 (S.D. Ohio March 18, 2014), adopted and affirmed 2014 WL 4437290 (S.D. Ohio Sept. 9, 2014).

    Here, it is difficult to classify the consultative examination as outdated, given that it took place less than a year prior to the administrative hearing.  Further, the additional treatment records do little to amplify the findings in that examination, and suggest only one additional limiting condition, that of bilateral shoulder restrictions.  But the ALJ took Plaintiff's shoulder condition into account in his residual functional capacity finding by restricting Plaintiff to some degree in overhead reaching.  Even if Plaintiff's reaching restriction is more severe than the ALJ found it to be, the vocational expert identified jobs which Plaintiff could perform if he could reach overhead only occasionally.  There is nothing in the record which makes this an unusually complex case or suggests that without the use of a medical expert, the ALJ had no basis for interpreting the records or making findings based on the information they contained.  The Court finds no error, therefore, in the ALJ's choice not to call a testifying medical expert.

### C.  The Credibility Finding

    Plaintiff's final argument focuses on the way in which the ALJ made his credibility finding.  He identifies several problems in the process, including the fact that the state agency reviewers stated that Plaintiff's report of symptoms was fully credible (and the ALJ adopted their findings); that the ALJ improperly found that Plaintiff was intentionally noncompliant with treatment recommendations (specifically, the CPAP machine);

and that the ALJ improperly equated Plaintiff's ability to do some activities of daily living with the ability to work on a full-time basis.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the ALJ first concluded that Plaintiff "ultimately admitted to activity consistent with the ability to engage in light work...." (Tr. 50).  That activity included the ability to shower, dress, mow, clean, do laundry, shop, and perform light repairs, as well as trying to start a lawn care business and walk around outside.  However, the ALJ also characterized this evidence as showing that Plaintiff was "at least capable, of greater functioning than his testimony and allegations of disabling impairments had suggested." (Tr. 51).  This latter conclusion is one which the ALJ was entitled to draw from the record.  The ALJ was also entitled to take into account the fact that Plaintiff did advertise himself as able to perform lawn care services.  The Court finds that, despite some ambiguity in the ALJ's decision, the ALJ did not make a decision that Plaintiff could do light work based solely on activities of daily living that may not equate to light work activity on a sustained basis,

-11-

and that the ALJ did not err in the way he considered discrepancies between Plaintiff's activities of daily living and his testimony concerning disabling symptoms.

    Next, the ALJ engaged in a very lengthy discussion of treatment compliance or noncompliance.  It is true, as Plaintiff points out, that the ALJ considered Plaintiff's claimed financial inability to buy a CPAP machine as "suspect" and noted that the record contained no evidence as to how much such a device would cost.  Were that the only evidence the ALJ cited on this issue, Plaintiff's argument that the ALJ relied on speculation, rather than on evidence, might have merit.  However, the ALJ also noted that Plaintiff had not been particularly compliant with other medical advice or treatment as well, including continuing to smoke, not wearing support hose, rejecting a sample inhaler, failing to follow a healthy diet, and not taking his diabetes medications.  (Tr. 52-53).  The ALJ rejected Plaintiff's explanations that all of these instances were caused by financial inability to afford medication or treatment, and cited reasons why he found that to be so.  Finally, the ALJ stated that the issue relating to the CPAP machine was not critical to his decision, but was "one small consideration in the overall assessment of the credibility of the claimant's allegation." (Tr. 54).  Given this extensive discussion of the issue, the Court concludes that even if the ALJ make an incorrect assumption about Plaintiff's ability to afford a CPAP machine, that assumption did not so taint the ALJ's credibility finding to the point where the case would need to be remanded on that issue.

    The ALJ did not address the third point raised in Plaintiff's credibility argument, which is the fact that the state agency reviewers said that Plaintiff's "statements regarding his condition and [symptoms] is (sic) fairly consistent with the medical evidence."  (Tr. 102).  However, the same reviewers who credited his statements found that he could perform

-12-

light work.  It is not clear why the ALJ was not entitled to reach the same conclusion, nor is it clear that the ALJ was evaluating the same statements that the state agency physicians reviewed.  The Court finds no merit in this argument.

Finally, Plaintiff raises, for the first time in his reply brief, an argument about the ALJ's consideration of the fact that Plaintiff received unemployment benefits, which are usually supported by a statement that the recipient is able and available to work.  Apart from the fact that the Court does not ordinarily consider arguments made for the first time in a reply memorandum, it does not appear that the ALJ gave this factor any substantial amount of weight.  Again, looking at the overall credibility assessment, the Court finds no basis on which to deviate from the usual rule that such assessments are entitled to substantial deference.  See Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001)(an ALJ's credibility finding is something that a reviewing court "may not disturb absent compelling reason...").  Consequently, the Court will recommend that the statement of error be overruled.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

>                             /s/ Terence P. Kemp
>                             United States Magistrate Judge